**Clarence Robert HALL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 94–CA–002664–MR.

Court of Appeals of Kentucky.

April 11, 1997.

Case Ordered Published by Supreme Court Nov. 13, 1997.

Discretionary Review Denied by Supreme Court Nov. 13, 1997.

C. McGehee Isaacs, Cincinnati, OH, for Appellant.

Chris Gorman, Attorney General, Michael L. Harned, Assistant Attorney General, Frankfort, for Appellee.

Before WILHOIT, C.J., and ABRAMSON and EMBERTON, JJ.

## OPINION

EMBERTON, Judge.

Clarence Robert Hall was convicted of first-degree rape and second-degree burglary. He waived jury sentencing and, in accordance with the Commonwealth's recommendation, received fifteen years on the rape offense and eight years on the burglary offense; the terms were ordered to run con-currently. In his quest for reversal and a new trial, Hall raises three arguments. We reject each and affirm.

On July 17, 1992, the police responded to an emergency call at the residence of Jean Jaggers at 2102 New Main Street in Louisville. Upon their arrival, the officers found Jaggers locked in her bedroom, crying, terrified, and obviously physically ill. Jaggers was first taken to police headquarters where she identified Hall as the assailant and related the facts of the attack. She was taken then to the University Hospital where an examination revealed bruising on her back, neck, and the back of her legs, mud on her legs, swollen lips, blood in one of her ears, and fluid and semen in her vagina.

Hall was subsequently indicted by the Jefferson County Grand Jury for first-degree rape and burglary.

Prior to trial, defense counsel moved to admit the testimony of Lisa Poynter regarding earlier sexual activity between Hall and Jaggers. Counsel also sought admission of evidence regarding a similar incident involving Jaggers allegedly occurring in August 1993. The trial court denied both motions.

At trial testimony revealed that Jaggers moved into the house on New Main Street in June 1992, which at the time was being rented by Lisa Poynter. Jaggers planned to later take over the lease, so for several weeks she and Lisa lived there together. On various occasions during that time Hall, Jaggers and Lisa partied together using alcohol, marijuana and cocaine.

Shortly after moving in, Jaggers spent the day at the hospital being treated for complications that had resulted from minor surgery the previous month. She returned home around 9:00 p.m.; her boyfriend, Brian, stayed with her until about midnight. Then, according to Jaggers, sometime soon after Brian left she was awakened by a man in her bedroom. At first, she thought it was Brian but soon recognized the man to be Hall. With a knife in his hand, he leaped upon her, pinned her to the bed, flipped her onto her stomach and pushed her head into the pillow. He then began to fondle and touch her vagina, ultimately penetrating her and ejaculat-

ing. Threatening to kill her if she moved he then disappeared from the room. She waited briefly, then shut and locked her door, and called 911.

Testifying in his own defense, Hall stated he met Jaggers a few months prior to the incident. He related that they partied together and that he had gotten drugs for Jaggers. He claimed he and Jaggers had been sexually intimate before July 17, 1992—having engaged once in oral sex and another time in "heavy petting." He testified that on July 17, 1992, he went to Jaggers' house where they engaged in consensual sexual intercourse. According to him, Jaggers agreed to have sex in return for his promise to get her drugs. He contended she fabricated the rape charge to get back at him because he did not deliver on the drugs. Jaggers denied prior sexual intimacy with Hall and maintained the intercourse on the night of July 17 was not consensual.

Police investigating the scene discovered the screen had been removed from the kitchen window. They also observed mud under the window.

■ Hall claims error in the trial court's refusal to allow testimony from Lisa regarding a previous sexual relationship between him and Jaggers. Pursuant to procedures set forth in KRE 412, a hearing was conducted for the purpose of determining the admissibility of such testimony from Lisa. The court ruled Hall would be permitted to present evidence from witnesses who had personal knowledge of previous consensual sexual relations between him and Jaggers. But the court disallowed Lisa's testimony because it was determined to be "pure speculation." It found that the prejudicial effect of her testimony "clearly outweighs any probative value it may have."

We have carefully reviewed the record and cannot conclude the trial court abused its discretion in assessing the proffered testimony. It was clear Lisa possessed no actual knowledge of a prior sexual relationship between Hall and Jaggers. She claimed the

two had gone into Jaggers' bedroom on a few occasions. However, she admitted they were not kissing, hugging or otherwise affectionate before entering the room and that Jaggers explained they were going into her room to talk. Neither Jaggers nor Hall told Lisa they had sexual intercourse, and neither did she ever observe the two engaged in intercourse. Since she could testify as to no specific instances we, therefore, hold the trial court did not err in excluding the testimony. KRE 412(3)(c)(1); *Commonwealth v. Dunn*, Ky., 899 S.W.2d 492 (1995).

■ For Hall's second allegation of error he argues that the trial court improperly excluded evidence of a second rape incident involving Jaggers.

In August 1993, subsequent to the events giving rise to the present action but before the trial, Jaggers claimed to have been raped a second time. This claim involved three men—none of whom was the defendant. The evidence, received by avowal, revealed that on this occasion, Jaggers, who had experienced car trouble, was picked up by three men. She recognized them but did not know their names. They stopped and picked up a second woman (apparently one of the men's girlfriend) then proceeded to a motel. Allegedly, Jaggers was taken to a room where one of the men held her down while another had sex with her. She eventually escaped the room and called the police. Upon investigation the men refuted her allegations, claiming she consented to have sex in exchange for their promise to provide her with drugs. Although she declined to press charges, citing her previous ordeal with Hall as a deterrent, Jaggers held steadfast to her allegations.

Again, we conclude the trial court appropriately exercised its discretion in excluding this evidence. The exclusion did not, in our opinion, deny Hall a fair trial. Hall has not cited, and we have not found, any Kentucky decision directly on point. We have, however, reviewed numerous cases from other jurisdictions grappling with this precise issue.[1]

1. For a comprehensive overview of the varying approaches utilized to ascertain admissibility of this type evidence *see Impeachment or cross-ex-* *amination of prosecuting witness in sexual offense trial by showing that prosecuting witness threatened to make similar charges against other per-*

It appears the general rule which has emerged in cases involving sexual offenses, is that the admissibility of evidence of similar accusations made by the victim depends on whether they have been proven to be demonstrably false. To comport with the defense theory of a fabrication scheme, there must be proof of the falsity of the unrelated allegations. *See e.g., Hughes v. Raines,* 641 F.2d 790 (9th Cir.1981); *United States v. Bartlett,* 856 F.2d 1071 (8th Cir.1988); *United States v. Cardinal,* 782 F.2d 34 (6th Cir.), *cert. denied* 476 U.S. 1161, 106 S.Ct. 2282, 90 L.Ed.2d 724 (1986); *United States v. Provost,* 875 F.2d 172 (8th Cir.), *cert. denied* 493 U.S. 859, 110 S.Ct. 170, 107 L.Ed.2d 127 (1989); *Roundtree v. United States,* 581 A.2d 315 (D.C.App.1990); *United States v. Torres,* 937 F.2d 1469 (9th Cir.1991). The importance of proof concerning the falsity of the other allegations has been enunciated in numerous state court decisions as well. *See e.g., State v. Kringstad,* 353 N.W.2d 302 (N.D.1984); *State v. Anderson,* 211 Mont. 272, 686 P.2d 193 (1984); *Little v. State,* 413 N.E.2d 639 (Ind.App.1980); *State v. Blalack,* 434 N.W.2d 55 (S.D.1988); *State v. Hutchinson,* 141 Ariz. 583, 688 P.2d 209 (App.1984); *State v. Barber,* 13 Kan.App.2d 224, 766 P.2d 1288 (1989).

Here, the trial court determined the evidence lacked probative value inasmuch as it related to events occurring subsequent to the incident involving the defendant. We agree this diminishes the probative value of the evidence. Additionally, its veracity has yet to be tested, which, in our opinion, further diminishes its probative value. While arguably relevant, evidence of this nature is without doubt extremely prejudicial. Its admission would undermine the purpose of KRE 412, shifting the focus from the real issues, and effectively put the victim on trial.

[redacted] Other jurisdictions have fashioned a resolution we consider prudent. If the unrelated accusations are true, or reasonably true, then evidence of such is clearly inadmissible primarily because of its irrelevance to the instant proceeding. Additionally, unrelated allegations which have neither been proven nor admitted to be false are properly excluded. If demonstrably false, the evidence still must survive a balancing test, i.e., the probative value must outweigh the prejudicial effect. This approach eliminates the risk of circumventing evidentiary rules designed to protect the legitimate interests of the victim as well as the risk of obfuscating the real issues; it preserves the integrity of the trial process. Ky. R. Evid. (KRE) 403, 404, 412, and 608.

In the present case, the unrelated allegations were not proven nor admitted to be false. In fact, Jaggers reaffirmed the truthfulness of her charges. The relevance of this evidence is questionable at best. When viewed in its entirety, the record reveals Hall was allowed to effectively cross-examine Jaggers and pursue and present his defense. The trial court did not abuse its discretion by excluding the evidence.

Finally, Hall claims he was entitled to an instruction on sexual misconduct pursuant to Ky.Rev.Stat. (KRS) 510.140. We disagree. Plainly, the facts and evidence presented in this case did not warrant the instruction. It was properly refused. *Johnson v. Commonwealth,* Ky., 864 S.W.2d 266 (1993); *Yarnell v. Commonwealth,* Ky., 833 S.W.2d 834 (1992); *Cooper v. Commonwealth,* Ky., 550 S.W.2d 478 (1977).

The judgment of the Jefferson Circuit Court is affirmed.

All concur.

[redacted]

*sons,* 71 A.L.R.4th 448; and *Impeachment or cross-examination of prosecuting witness in sexual offense trial by showing that similar charges were made against other persons,* 71 A.L.R.4th 469 (1989).