Ronald C. BERRY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2000–CA–001304–MR.

Court of Appeals of Kentucky.

Nov. 2, 2001.

Discretionary Review Denied by Supreme Court Sept. 26, 2002.

William E. Johnson, Laura K. Stratton, Frankfort, KY., for Appellant.

Albert B. Chandler III, Attorney General of Kentucky, Matthew D. Nelson, Assistant Attorney General, Frankfort, KY, for Appellee

Before: DYCHE, EMBERTON, and HUDDLESTON, Judges.

*OPINION*

DYCHE, Judge.

Ronald C. Berry appeals from a final judgment and sentence of imprisonment entered by the Fayette Circuit Court after a jury found Berry guilty of twelve counts of sodomy in the third degree (Kentucky Revised Statute [KRS] 510.090). Berry was sentenced to three years' imprisonment on each count, with all sentences to run concurrently for a total of three years. Having reviewed the record and the applicable law, we affirm.

Berry was the executive director of Micro–City Government in Lexington, Kentucky. Micro–City Government is a nonprofit community service program providing activities for inner-city youth. Micro–City Government sought to provide programs to keep youth off the street and foster a positive relationship between police and young people. It is modeled after the local government, with Lexington teenagers filling the mock governmental roles. It provided employ-

ment and various programs in which the teenagers could participate, including a summer free lunch program, neighborhood block parties and dances, sports programs, field trips, and a variety of girls' and boys' clubs.

The Fayette County grand jury returned an indictment against Berry in March 1998, charging him with three counts of indecent or immoral practices [1] and twelve counts of third-degree sodomy.[2] The sodomy was alleged to have occurred between late 1977 and 1980. All five of the victims were participants in Micro City Government and most were members of the Playboy Club, a social club of Micro–City Government which met weekly at Berry's home. All were either fourteen or fifteen years old when Berry committed various sexual acts with them, including oral sex and anal penetration. Berry was at all times over twenty-one years of age.

The first trial of this action was conducted in September, 1998. The jury was unable to agree on a verdict, and the court declared a mistrial. The second trial, conducted in April, 1999, also ended in a mistrial after a witness introduced polygraph testimony. A subsequent defense motion for change of venue was granted, and the trial was moved to Jefferson County.

In January, 2000, the Commonwealth secured another indictment against Berry for third-degree sodomy against a sixth victim. The indictment stated that the offenses occurred "[b]etween 1982 and March 17, 1986." Once again, Berry met the victim through Micro–City Govern-

ment and, like the other five victims, Berry performed a variety of sexual acts on this victim, including oral sex and anal penetration. The first offense occurred when the victim was twelve years old. Over Berry's objection, the new indictment was consolidated with the previous indictment for trial. The third trial was conducted in March, 2000. The jury returned a verdict of guilty to all twelve counts of third-degree sodomy, and recommended concurrent sentences of three years' imprisonment for each count. This appeal follows.

 Berry first alleges error when the trial court denied his motion to dismiss the charges due to the lengthy preindictment delay. Kentucky law provides no statute of limitations for the prosecution of a felony offense. KRS 500.050; *Reed v. Commonwealth*, Ky., 738 S.W.2d 818, 820 (1987). Because the delay occurred prior to Berry's indictment or arrest, the speedy trial provisions in the Sixth Amendment to the United States Constitution and Kentucky Constitution § 11 are not implicated. *Reed*, 738 S.W.2d at 820. "Nevertheless, unjustified and prejudicial preindictment delay may constitute a violation of due process and require dismissal. Prejudice alone will not suffice." *Kirk v. Commonwealth*, Ky., 6 S.W.3d 823, 826 (1999) (internal citation omitted).

 The United States Supreme Court, in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), indicated that a due process inquiry must consider both the reasons for the delay and the prejudice to the accused. *Id.* at 790, 97 S.Ct. at 2049, 52 L.Ed.2d at 759. Dis-

---

1. One count of indecent or immoral practices was dismissed on motion of the Commonwealth prior to the first trial. The remaining two counts were dismissed on motion of the Commonwealth prior to the third trial. We therefore omit any discussion of these charges.

2. Counts 14–15 of the original indictment were dismissed on motion of the Commonwealth prior to the third trial.

missal of the indictment is required only where the accused shows substantial prejudice to the ability to present a defense and where the prosecutorial delay was intentional in order to gain a tactical advantage. *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481 (1971); *Kirk*, 6 S.W.3d at 826; *Reed*, 738 S.W.2d at 820.

■ Berry asserts that because Kentucky has no statute of limitations applicable to felony prosecutions, only the substantial prejudice prong of *Marion* should be applied by this Court to the case at bar. We decline his invitation to construct such an analysis for two reasons. First, the Supreme Court, both in *Kirk, supra,* and *Reed, supra,* has indicated that both prongs of the *Marion* test should be examined where the accused alleges preindictment delay. This Court is bound by and must follow precedents established by opinions of the Supreme Court. Rules of the Supreme Court 1.030(8)(a). We cannot, therefore, elect to apply only one prong of the test when our highest court has applied the test in full.

Secondly, we disagree with Berry's assertion that the *Marion* test applies only where there is a statute of limitations framework in place to protect the rights of the accused. *Marion* states:

[I]t is appropriate to note here that **the statute of limitations does not fully define the [accused's] rights** with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay ... caused substantial prejudice ... and that the delay was an intentional device to gain tactical advantage over the accused.

404 U.S. at 324, 92 S.Ct. at 465, 30 L.Ed.2d at 480–81 (emphasis added). It appears to us that the due process analysis may be utilized separate from statute of limitations considerations. Therefore, an accused must satisfy both prongs of the analysis, even in the absence of a statute of limitations.

Berry claims that his ability to defend himself against the charges was prejudiced by the delay in bringing charges, in some instances of up to twenty years; that the vague time frames established for the occurrences substantially harmed his ability to provide an alibi for the times in question; and that records of Micro City Government related to the victims and the Playboy Club had been destroyed. Similar claims of prejudice were raised in *Reed, supra,* where there was an eight-year delay between the crime and the indictment. The Court responded:

[A]ppellant has failed to demonstrate actual prejudice. He has generally asserted that the delay prevented the discovery of alibi witnesses, but has shown nothing more. The mere possibility that some evidence which was unavailable at trial would have been available at an earlier time is insufficient. Appellant was accused of having raped B.R.C. five times within a period of approximately two hundred days. **Not a single date was identified as a date upon which any one of the crimes occurred.** For alibi testimony to have significantly aided appellant's defense, witnesses would have been necessary to account for his whereabouts at all or substantially all times during this period. The possibility that any person could produce such evidence is remote.

738 S.W.2d at 820 (emphasis added; internal citation omitted).

In *Kirk, supra,* a 1978 murder indictment was dismissed after the defendant

was adjudged to be incompetent to stand trial. He was reindicted for the murder in 1997, tried, convicted, and sentenced to life imprisonment. The Court remarked that, in that time, the chief investigating officer for the Commonwealth had died and the crime scene had been destroyed. It stated that "the mere passage of time does not give rise to a constitutional violation *per se*," and that absent an "improper reason for the delay, mere proof of prejudice would be insufficient to support a dismissal." 6 S.W.3d at 827. We do not believe Berry's circumstances are markedly different from *Kirk* or *Reed*, and reject his claims of actual prejudice as insufficient.

■ Berry has not attempted to argue that there was an intentional effort on behalf of the Commonwealth to delay the procurement of an indictment for tactical reasons. To succeed on his claim that the delay caused substantial prejudice to him, he must satisfy both prongs. Even had we found that Berry had demonstrated actual prejudice, he has failed to present any argument related to intentional delay for tactical advantage. We conclude as a matter of law that the trial court properly rejected his claim of prejudicial preindictment delay.

■ Berry next claims that the trial court erred by consolidating the 1998 indictment with the 2000 indictment for trial, and that certain charges should have been severed for trial because the sexual acts charged were different in circumstance and remote in time.[3] Kentucky Rule of Criminal Procedure (RCr) 9.12 permits a court to join two or more indictments for trial if the offenses could have been joined in a single indictment. RCr 6.18 states that separate offenses may be joined in a

single indictment "if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." However, RCr 9.16 requires that offenses shall be separated for trial "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses." The trial court is afforded broad discretion in regard to joinder and its decision will not be overturned absent a showing of clear abuse of that discretion. *Violett v. Commonwealth*, Ky., 907 S.W.2d 773, 775 (1995).

■ A significant factor in determining whether joinder is proper, or whether prejudice exists, is the extent to which evidence of one offense would be admissible in a trial of the other offense. *Commonwealth v. English*, Ky., 993 S.W.2d 941, 944 (1999). In this light, "evidence of independent sexual acts between the accused and persons other than the victim, if similar to the act charged, and not too remote in time, are admissible to show intent, motive or a common plan." *Anastasi v. Commonwealth*, Ky., 754 S.W.2d 860, 861 (1988)(*citing Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 [1985] ).

■ Anastasi was charged with abusing four boys, one on two occasions between 1982 and 1984. The Court held that it was not an abuse of discretion to allow testimony of an alleged rape of another young boy that occurred eight years prior to trial and five years prior to the sexual abuse charged. *Anastasi*, 754 S.W.2d at 861. Evidence that is remote in time "may only be admitted when the prior alleged activity indicates 'a common and continuing pattern of conduct on the part of the accused,' " and evidences "not merely an

---

**3.** The heading for this argument in Berry's brief also claims error in the trial court's denial of a continuance of the trial date. How-

ever, he fails to argue this point in the brief and we therefore decline to address it.

isolated incident which occurred a long time ago ... but rather the first in a series of sexual assaults." *Id.* at 863 (Stephens, C.J., dissenting) (*quoting Pendleton, supra* at 552).

In this case, the earliest offense charged in the 1998 indictment occurred in December 1977, and the latest offense in that indictment occurred in 1980. The ten counts in the 1998 indictment were committed on five different victims. The 2000 indictment charged that Berry committed the same criminal act as in the first indictment—third-degree sodomy [4]—on another victim in 1982, and again in 1986. In every instance, the crime involved a boy under the age of sixteen who was participating in Micro City Government. All twelve instances of third-degree sodomy occurred in Berry's home while he was there alone with each boy. Given these remarkable similarities in character and circumstance, we do not believe that the events were so remote in time that joinder at trial amounted to unfair prejudice to Berry.

Berry cites *Rearick v. Commonwealth,* Ky., 858 S.W.2d 185 (1993), in support of his position that the indictments should have been severed. However, Rearick was convicted of three counts of first-degree sodomy, one count of third-degree sodomy, and two counts of first-degree sexual abuse from three separate indictments consolidated for trial. The Court held that evidence of other crimes charged in the indictment was not sufficiently similar to the charge on trial so that it would be admissible as part of a common scheme or plan, and that the "other crimes" evidence likely tainted the jury's belief as to each of the crimes charged. *Id.* at 188. Berry, however, was charged with the same criminal offense. The evidence in each count was sufficiently similar to demonstrate a common scheme or plan, and the trial court did not err in consolidating the indictments, or the charges, for trial. *See Violett, supra.*

Berry's third contention is that the trial court abused its discretion by overruling his objection to the Commonwealth's peremptory challenge to a juror. Following voir dire, the Commonwealth exercised one of its peremptory strikes against juror number 130, an African–American female. Berry timely objected to this strike, arguing that the Commonwealth had used this peremptory challenge against juror number 130 because of her race. The Commonwealth responded that it struck the juror because she had stated that a family member had been a defendant in a criminal case, and because she had been a party to a discrimination lawsuit.

*Washington v. Commonwealth,* Ky., 34 S.W.3d 376 (2000), sets forth a three-part test for evaluating a claim that a potential juror has been removed for racially-motivated reasons. The defendant must first make a prima facie showing of racial bias for the peremptory challenge. If the requisite showing is made, the burden shifts to the Commonwealth to articulate "clear and reasonably specific" race-neutral reasons for the peremptory challenge. The trial court must then evaluate the credibility of the proffered reasons to determine if the defendant has established purposeful discrimination. *Id.* at 379 (*citing Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 [1986] ).

---

4. KRS 510.090(1)(b) states that a person is guilty of third-degree sodomy when, "[b]eing twenty-one (21) years old or more, he engages in deviate sexual intercourse with another person less than sixteen (16) years old." "Deviate sexual intercourse" is defined in KRS 510.010(1) in part as "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another...."

The trial court found that the Commonwealth's reasons for striking juror number 130 were valid, race-neutral reasons. The trial judge's findings in this context largely turn on evaluation of credibility, and are thus given great deference by a reviewing court. *Stanford v. Commonwealth,* Ky., 793 S.W.2d 112, 114 (1990). We do not find that the trial court clearly erred in its determination, and therefore accept its ruling. *Id.*

Berry next asserts that the trial court erred by not granting his motion for a mistrial during the testimony of B. D., one of the victims. At Berry's first trial, B.D. stated that he did not tell his parents about a fondling incident[5] by Berry because B. D.'s father had told him that Berry was a homosexual and instructed him not to go to Berry's house. Berry objected and requested an admonition to the jury, which the trial court gave. At the second trial, prior to asking B.D. why he did not tell his parents about that same incident, the Commonwealth asked to approach for a bench conference. Berry's attorney requested that the court instruct B.D. not to refer to Berry's sexual preference, arguing that the statement was hearsay and would be unfairly prejudicial. The trial court granted the motion, and B.D. made no mention of his father's comment.

When asked by the Commonwealth at the third trial why he went back to Berry's house and continued meeting with the Playboy Club after the first incident, B.D. stated, "Well, the second time I, uh, come [sic] through and I'm thinking, you know, everything's cool and, you know, Ron's my [cousin] because he knows I'm not that way because, you know, in some sense we all sensed that Ron was, you know, may have been gay or bi-...." Berry objected

and requested a mistrial. The trial court denied the motion, but admonished the jury to disregard the statement.

Berry argues that *Chumbler v. Commonwealth,* Ky., 905 S.W.2d 488 (1995), held that the admission of evidence related to a defendant's sexual habits was reversible error. We believe this mischaracterizes the holding in *Chumbler.* The Supreme Court analogized evidence of homosexuality to evidence of extramarital affairs, and stated that "[e]vidence of extramarital sexual activity should be **admitted or excluded** without regard to ... whether homosexual or heterosexual activity is involved." *Id.* at 492 (emphasis added). The Court ruled that evidence of a homosexual relationship was admissible in a murder trial because it was connected to the crime charged and relevant to establish motive. *Id.* at 493. It further instructed that "testimony about and references to [defendant's] relationships with third parties and evidence of the defendant's sexual habits **unrelated to the crime charged** was improper smear evidence irrelevant to ... motive." *Id.* at 493–94 (emphasis added).

The testimony was not hearsay, as it was not introduced to prove the truth of the matter asserted but rather to show the victim's state of mind in not telling his parents about the incident. Kentucky Rules of Evidence (KRE) 801(c); 803(3). We find that the testimony would have been admissible, because it was not unrelated to the crime charged, and did not mention any third parties; it was therefore not improper smear evidence. Trial court error, if any, would have been in Berry's favor, since the jury was admonished to disregard the statement.

5. The fondling incident occurred before, and separate from, the third-degree sodomy incident charged in the indictment.

Berry's fifth assignment of error concerns the testimony of Detective Stella Plunkett. Plunkett testified that, based on her experience, it was not unusual for victims of child sexual abuse to delay reporting that abuse. Such a delay is an element of child sexual abuse accommodation syndrome (CSAAS), a syndrome that has been routinely rejected as expert opinion evidence in Kentucky. *Newkirk v. Commonwealth*, Ky., 937 S.W.2d 690 (1996); *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985). "The only reason generally advanced for admitting CSAAS testimony is its relevance to credibility of the victim." *Newkirk*, 937 S.W.2d at 693. Berry argues to this Court that Detective Plunkett's testimony thus improperly bolstered the credibility of the victims. However, he failed to make a contemporaneous objection to the testimony at trial. RCr 9.22.

■■■ The Supreme Court faced a similar situation in *Stringer v. Commonwealth*, Ky., 956 S.W.2d 883 (1997). There, a witness improperly vouched for the credibility of a child sexual abuse victim, but there was no contemporaneous objection. The Court stated,

> If a party does not timely inform the trial judge of the alleged error and request the relief to which he considers himself entitled, the issue is not preserved for appellate review. Nor do we believe that the admission of this evidence constituted 'manifest injustice' so as to rise to the level of palpable error. RCr 10.26.

*Id.* at 888 (internal citations omitted). Likewise, we decline to review this unpreserved error, and do not believe that admission of the testimony amounts to "manifest injustice" to warrant palpable error review. RCr 9.22; RCr 10.26.

Berry also charges that the Commonwealth made improper comments concerning uncharged crimes during its summa-

tion to the jury. During closing argument, the prosecutor mentioned that the instances of fondling to which witnesses had testified were also criminal acts, but Berry had not been charged with them in the current indictments because the charges were misdemeanor offenses subject to a one-year statute of limitations. Berry's counsel objected and requested a mistrial for mention of these prior bad acts. The Commonwealth indicated that it was merely trying to dispel any confusion the jury might have about why these offenses, which had been introduced through testimony, had not been charged. The trial court overruled the objection after determining that the Commonwealth did not plan to pursue this line of argument.

■■■ Attorneys are granted wide latitude during closing argument. *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 39 (1998), *cert. denied*, 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999). When reviewing allegations of error in closing argument, "[t]he required analysis, by an appellate court, must focus on the overall fairness of the trial, and not the culpability of the prosecutor.... A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407, 411–12 (1987)(internal citation omitted). Reversal is only justified when the alleged prosecutorial misconduct is so egregious as to render the trial fundamentally unfair. *Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 224 (1996).

■■■ We do not believe that the prosecutor went outside the permissible boundaries of closing argument with his statements. The fondling testimony to which he referred had been admitted without objection during the trial. It was not, as Berry argues, all related to the acts for

which he was charged; in one example previously discussed, B.D. testified to an incident in an automobile in which his penis was touched by Berry, an act for which Berry was not charged. Viewing the trial as a whole, we do not conclude that the fleeting reference by the prosecutor, explaining why these acts were not charged, rendered the trial fundamentally unfair.

Berry next argues that the trial court erred by preventing him from introducing evidence that one of the victims, K. G., had made other false allegations of sodomy with adult males. By avowal at the second trial, K.G. testified that he had engaged in sexual activity with a preacher after K.G. turned sixteen years of age.[6] By avowal at the third trial, the preacher denied the charge. The trial court excluded the evidence. Berry claims that the evidence was admissible to impeach K. G.'s credibility, and that the trial court erred in relying on KRE 412, which generally prohibits the introduction of evidence of a victim's past sexual behavior. We disagree.

*Hall v. Commonwealth,* Ky.App., 956 S.W.2d 224 (1997), is the case most directly on point. In *Hall,* the defendant in a rape trial sought to admit evidence that the victim had claimed to have been raped a second time, by three men, subsequent to the incident for which Hall stood accused. The men denied the rape allegations and claimed that the victim had consented to sex in exchange for drugs. The trial court excluded the evidence, and this Court affirmed. *Id.* at 226–27. After examining a number of cases from sister states, the Court adopted the following rule:

If the unrelated accusations are true, or reasonably true, then evidence of such is clearly inadmissible primarily because of its irrelevance to the instant proceeding. Additionally, unrelated allegations which have neither been proven nor admitted to be false are properly excluded. If demonstrably false, the evidence still must survive a balancing test, i.e., the probative value must outweigh the prejudicial effect.

*Id.* at 227.

Thus, the only way such allegations are admissible is if they are demonstrably false, and if the probative value of the evidence outweighs its prejudicial effect. This case differs from *Hall* in two significant respects. First, Berry has not shown that K.G.'s allegation of sexual activity with the preacher, unlike the contact with Berry, was a crime[7]; K.G. testified that he was over sixteen years of age when the purported sexual activity with the preacher occurred. However, this case also differs in the sense that the preacher's denial was made under oath by avowal. Nevertheless, we can not say that this denial makes the allegation demonstrably false. At best, the allegation has neither been proven nor admitted to be false. Even if it were demonstrably false, we do not find that its probative value outweighs its prejudicial effect. "While arguably relevant, evidence of this nature is without doubt extremely prejudicial. Its admission would undermine the purpose of KRE 412, shifting the focus from the real issues, and effectively put the victim on trial." *Id.* The trial court did not abuse its discretion by excluding the evidence.

---

6. By order entered March 14, 2000, the trial court ordered that K. G.'s avowal testimony be made part of the record of the proceedings of the third trial.

7. KRE 412(b)(3) states, in pertinent part, that "evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence is admitted in accordance with subdivision (c) and is ... [a]ny other evidence **directly pertaining to the offense charged.**" (Emphasis added.)

Berry's eighth claim of trial error was the failure of the trial court to give the jury his tendered instruction defining reasonable doubt. RCr 9.56(2) prohibits the definition of the term "reasonable doubt," and courts in the Commonwealth have long followed this rule. *Commonwealth v. Callahan*, Ky., 675 S.W.2d 391, 393 (1984). *See also Young v. Commonwealth*, Ky., 50 S.W.3d 148 (2001); *Perdue v. Commonwealth*, Ky., 916 S.W.2d 148 (1995); *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990); *King v. Commonwealth*, Ky.App., 875 S.W.2d 902 (1993).

 Despite the language of RCr 9.56(2), Berry claims that *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), and *Pevlor v. Commonwealth*, Ky., 638 S.W.2d 272 (1982), require the court to determine whether, under the totality of the circumstances, an instruction on reasonable doubt should be given. Giving due consideration to the record, we are not of the opinion that the failure to instruct the jury on the definition of reasonable doubt deprived Berry of a fair trial.

Finally, Berry alleges that the trial court erred by allowing the dates of the offenses listed in the jury instructions to vary from the dates listed in the indictments. Specifically, Instruction No. 4 read "in or about 1979 or 1980," whereas the corresponding charge in the indictment read "in 1979 or 1980," and Instruction Nos. 5 and 6 read "in or about 1979," and the corresponding charges in the indictment read "in 1979." Berry emphasizes that the dates are critical, because if the jury found that the offenses occurred after the victims turned sixteen years old, Berry could not be found guilty; he therefore claims that the dates are material elements of the offenses charged.

Berry correctly notes that RCr 6.16 permits the court to amend an indictment prior to rendition of a verdict if no additional or different offense is charged and the amendment will not substantially prejudice the defendant. In this case, the Commonwealth made no motion to amend the indictment, but merely asked that the jury instructions be amended.

The critical question is the age of the victim at the time of the offense, not the specific date of the offense. *Stringer*, 956 S.W.2d at 886. The victims testified that the offenses occurred before they turned sixteen years old. Since the age of the victims is the fundamental question, we do not believe that the semantic difference between "in" and "in or about" caused substantial prejudice to Berry or affected his due process rights. "[U]nder RCr 6.16 the indictment could and should have been amended to include ... the date shown by the proof and used in the instructions. However, the failure to do so did not affect [Berry's] substantial rights." *Commonwealth v. Day*, Ky., 599 S.W.2d 166, 169 (1980).

The judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.