# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

## 2018-SC-000183-MR

GEORGE ROBERT WHITE        APPELLANT

V.        ON APPEAL FROM MCLEAN CIRCUIT COURT
HONORABLE BRIAN WIGGINS, JUDGE
NO. 17-CR-00065

COMMONWEALTH OF KENTUCKY        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

George Robert White appeals from a judgment of the McLean Circuit Court convicting him of first-degree trafficking in a controlled substance, over two grams of methamphetamine; tampering with physical evidence; possession of drug paraphernalia; and being a first-degree persistent felony offender. With these convictions, White was sentenced to twenty years in prison.

White contends that his right to due process and right to be presumed innocent were denied: (1) because a member of the jury pool saw him in his jail clothing and told another prospective juror about it; and (2) because the trial court made statements concerning the order of presentation of evidence, which White claims amounted to impermissible comments on the burden of proof and his right to remain silent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Morgan Crane was an undercover informant for the police. Crane asked Sarah Lyons if she could get him an ounce of methamphetamine. Lyons contacted Erica Fentress about getting the ounce, and the drug deal was set up. Crane contacted police and told them about the impending drug deal. White was driving when he, Lyons, and Fentress showed up at a grocery store parking lot to deliver the methamphetamine to Crane.

The police were monitoring the deal and quickly arrested White, Lyons, and Fentress. Lyons and Fentress pled guilty to trafficking in methamphetamine and testified for the Commonwealth at trial. White's defense was that he was only giving Lyons and Fentress a ride and was unaware of the drug deal. White was convicted of all charges and sentenced to twenty years in prison. This appeal followed.

## II. JAIL CLOTHING ISSUES

White contends that he is entitled to a new trial because he was seen by a member of the jury pool wearing his jail clothing the morning of trial, who then told another jury pool member about it. White speculates that he may have been seen by other members of the jury pool in his prison clothing. But the only two members of the venire who are known to have seen White arriving for trial in his jail attire were excused for cause, and White's assertion that other members may have seen him is speculative. We are therefore persuaded that no error occurred.

When White arrived the morning of trial in his jail uniform, jury pool member Monica Wilson saw him in the parking lot. Wilson told jury pool member April Simmons about it. Wilson and Simmons did not tell any of the other members of the venire about the clothing, and both jurors were excused for cause and did not serve on the jury at White's trial.

There is no evidence that any other members of the jury saw White in his jail attire. Indeed, trial counsel directly asked the venire during *voir dire* if anyone had seen White prior to his entering the courtroom for trial, and there was no response from the panel. Defense counsel also asked the jury members when they had first seen White that day before he entered the court room. None of the jurors indicated that they had seen White prior to his entering the courtroom.

Nevertheless, trial counsel moved to strike the entire jury panel over the jail attire issue because jurors may "later remember" that they did indeed see White in his jail attire and realize that he is "the guy sitting there in the blue shirt." The trial court held a hearing in chambers on the matter and White testified about his movements that day while in his jail attire. White stated that he was taken to the restroom from the holding cell while still in his jail clothing. White stated that while he was being led down the hallway, even though there was a partition, he could see jurors in the courtroom, "meaning, of course, they could also see him."

At the end of the hearing the trial court found that the jurors had been questioned, two jurors had been identified and excused, and no other jurors

3

said they saw White prior to his entry into the courtroom with counsel. The trial court therefore denied White's motion to strike the entire jury panel.

"Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'" *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)); *Stacy v. Commonwealth*, 396 S.W.3d 787, 799–800 (Ky. 2013). Consistent with these principles, the "State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes[.]" *Estelle v. Williams*, 96 S.Ct. 1691, 1697 (U.S. 1976); *Scrivener v. Commonwealth*, 539 S.W.2d 291, 292 (Ky. 1976); *Stacy* at 799-800; RCr[1] 8.28(5) ("During his or her appearance in court before a jury the defendant shall not be required to wear the distinctive clothing of a prisoner."); 9 Leslie W. Abramson, Kentucky Practice—Criminal Practice & Procedure § 24.54 (5th ed. 2017). The same principles would of course be implicated if the defendant were to be seen by one or more members of the jury pool prior to trial who then served on the guilt phase jury.

As explained above, the only two members of the jury pool who were known to have been aware of White and his jail attire were Wilson and

---

[1] Kentucky Rules of Criminal Procedure.

4

Simmons, and they were dismissed for cause. Further, we have no reason to suspect that the remainder of the venire members were not truthful when they indicated by their silence upon questioning during *voir dire* that none of them had seen White in his jail uniform. We also have no basis to suppose that any of the jurors, as suggested by White, "later remembered" that they had indeed seen White in jail attire after indicating during *voir dire* that they had not.

We are also unpersuaded by White's argument that other jurors may have seen him as he was being led down the hallway because he could see into the courtroom through a partition, "meaning, of course, they could also see him." Again, this theory for reversal is based upon pure speculation and it is not consistent with the statements given by the jurors. We will not speculate that any of the jurors in the courtroom saw White as he passed by, hidden by a partition, particularly since none of the jurors spoke up when directly asked that question in *voir dire* nor upon later questioning.

White's arguments that he is entitled to a new trial because he was seen by members of the jury pool are either contradicted by the record or based upon unsupported speculation. Having suffered no prejudice due to the excused jurors' awareness of his arrival at the courthouse in his prison attire, White is not entitled to relief based upon a theory that any member who sat on the jury may have seen him in jail attire.

## III. TRIAL COURT'S STATEMENTS CONCERNING THE ORDER OF PROOF

White contends that an error requiring reversal occurred as a result of statements made by the trial court at the conclusion of *voir dire* concerning the

order of proof. White concedes he failed to object to the statements at the time they were made and has requested palpable error review under RCr 10.26:

> We will reverse under the palpable error standard only when a "manifest injustice has resulted from the error." RCr 10.26. "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006). When we engage in palpable error review, our "focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process.

*Tackett v. Commonwealth*, 445 S.W.3d 20, 26 (Ky. 2014) (quoting *Baumia v. Commonwealth*, 402 S.W.3d 530, 542 (Ky. 2013)).

At the conclusion of *voir dire* the trial court stated as follows: "After opening statements, the Commonwealth will put on evidence. After that, Mr. White will present evidence, then I will instruct you on the law of the case."

White contends that this statement resulted in reversible error because:

> When the trial court informed the jury that Mr. White would present evidence after the Commonwealth's proof, it implicitly shifted the burden of proof to the defendant.
>
> . . . .
>
> After the trial court's statement that the jury would hear proof presented by Mr. White, the jury was left with the impression that it would indeed hear from Mr. White, and his side of the story. The statement directed the jury's attention to the defendant's exercise of his right to remain silent. The jury was left thinking it would get to hear both sides. This is erroneously commenting on Mr. White's right to remain silent, and coupled with the comment also shifting the burden of proof, was highly prejudicial to Mr. White.

White is correct that in a criminal case, except in the case of certain affirmative defenses not applicable here, the burden of proof is always on the

Commonwealth. KRS[2] 500.707; *Kirk v. Commonwealth,* 6 S.W.3d 823, 828-829 (Ky. 1999). And a defendant has the right to remain silent. U.S. Const. Amend. V. However, we are unpersuaded that the trial court's statement violated either of these rights.

RCr 9.42, titled "Order of proceedings," states as follows:

The jury shall be sworn to try the issue after which the trial shall proceed in the following order, unless the court for special reasons otherwise directs:

(a) The attorney for the Commonwealth shall state to the jury the nature of the charge and the evidence upon which the Commonwealth relies to support it;

(b) The defendant or the defendant's attorney may state the defense and the evidence upon which the defendant relies to support it or the defendant may reserve opening statement until the conclusion of the evidence for the Commonwealth;

(c) The attorney for the Commonwealth must offer the evidence in support of the charge;

(d) The defendant or the defendant's attorney may make opening statement, if reserved, and offer evidence in support of the defense;

(e) The parties respectively may offer rebutting evidence, unless the court, for good reason in furtherance of justice, permits them to offer evidence-in-chief;

(f) The parties may submit or argue the case to the jury. In the argument, the attorney for the Commonwealth shall have the conclusion and the defendant or the defendant's attorney the opening. If more than one (1) counsel is to take part in the closing argument on either side, or if several defendants have separate defenses and appear by different counsel, the court shall arrange the order of argument, always giving the attorney for the Commonwealth the closing argument.

---

[2] Kentucky Revised Statutes

A comparison of the trial court's statement ("After opening statements, the Commonwealth will put on evidence. After that, Mr. White will present evidence, then I will instruct you on the law of the case") with RCr 9.42 reflects that all the trial court did was merely summarize the Rule for the jury so that they would be aware of what to expect as the actual trial unfolded over the next several hours. The statement had nothing to do with shifting the burden of proof to the defendant, nor was it a comment on the defendant's right to remain silent. Rather the statement was simply an accurate and routine summary of RCr 9.42. There was no error, let alone palpable error, when the trial court simply told the jury generally how the trial would proceed under the criminal rules.

## IV. CONCLUSION

For the foregoing reasons the judgment of the McLean Circuit Court is affirmed.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, J.J.; sitting. Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, J.J. concur. Hughes J., also concurs, agreeing that no palpable error occurred regarding the judge's statements with respect to the order of proof, but believe the more accurate and less problematic statement would be: "After that, Mr. White *may, if he chooses,* present evidence, then I will instruct you on the law of the case."

8

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate, Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Todd Dryden Fergusson
Assistant Attorney General of Kentucky