**Jack Randall KIRK, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 98–SC–0663–MR.

Supreme Court of Kentucky.

Dec. 16, 1999.

Michael J. Curtis, Michael J. Curtis Law Office, Ashland, for Appellant.

A.B. Chandler, III, Attorney General, State Capitol, Frankfort, Carlton S. Shier, IV, Assistant Attorney General, Office of the Attorney General, Frankfort, for Appellee.

COOPER, Justice.

Appellant's mother, Cora Belle Kirk, was stabbed to death in her home in Boyd County, Kentucky, on September 7, 1978. Appellant was indicted for her murder on the following day. The trial judge found Appellant to be incompetent to stand trial and dismissed the indictment. Appellant was reindicted on April 17, 1997. Following a trial by jury in the Boyd Circuit Court, he was convicted of murder and sentenced to life in prison. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), and asserts four reasons why his conviction should be reversed: (1) destruction of material evi-

dence; (2) preindictment delay; (3) admission into evidence of an autopsy report; and (4) improper remarks by the trial judge during voir dire.

## I. FACTS.

Virginia Ray Fannin, who lived across the street from Cora Belle Kirk, testified that on the afternoon of September 7, 1978, Appellant walked across the street to her residence and stated, "I think I killed my mother." Joyce Crisp, who lived next door to Fannin, was seated on her front porch and overheard the statement. Fannin accompanied Appellant to the Kirk residence and found the victim's body lying on the floor. Appellant went into the house and sat down in a chair. Fannin went back across the street and told Mrs. Crisp to call the police and to seek help from Fannin's nephew, Ronald Eldridge, who operated a dental laboratory out of his nearby residence. When Eldridge and his two employees, Glen Mullins and Robert Caskey, arrived at the Kirk residence, the victim was still lying on the floor, bleeding, but still alive. Appellant was still sitting in the chair. Eldridge attempted to administer first aid, but was unable to determine the cause of the victim's condition. Mullins noticed a knife near the chair where Appellant was seated and used a newspaper to move it out of Appellant's reach. By the time medical personnel arrived, the victim had died. Boyd County Coroner Michael Neal was called to the scene and pronounced the victim dead. A subsequent autopsy performed at Neal's request by Dr. Karl Neudorfer, pathologist, revealed the cause of death to have been a massive hemorrhage in the left lung due to a stab wound.

## II. MISSING EVIDENCE.

The chief investigating officer of the murder case was Kentucky State Police (KSP) Detective Howard Bellamy. His investigative report is in the record and reflects that he collected the following crime scene evidence: (1) the dress worn by the victim at the time she was stabbed; (2) a Parker–Frost 2 ½ inch single-bladed pocket knife; (3) latent fingerprints removed from the telephone; (4) four swabs used to swab Appellant's hands for the detection of blood; and (5) a vial of the tap water used to swab Appellant's hands, which was collected for control purposes. This evidence was forwarded to the KSP crime laboratory. A report from the crime laboratory dated October 11, 1978 indicates that both the victim's dress and the knife contained group "O" human blood, and that a chemical test of one of the swabs used to swab Appellant's hands was positive for blood, but that "due to the inability to further characterize this stain, blood cannot be conclusively identified."

The 1978 indictment was dismissed on March 13, 1979. Detective Bellamy closed his file in 1981 and withdrew the evidence from KSP custody. Bellamy died in 1992. The fact that he had closed his file and disposed of the crime scene evidence was discovered when the investigation was reopened in 1995. Upon return of the 1997 indictment, Bellamy's entire investigative file, including the crime laboratory report, was furnished to Appellant in response to a discovery request. Appellant then filed a motion to suppress all of the crime scene evidence on grounds that Bellamy's death made it impossible for the Commonwealth to authenticate any of the evidence by proof of "chain of custody." The Commonwealth responded that the evidence had been disposed of, thus was no longer available for admission into evidence in the case. Appellant then switched directions and moved to dismiss the indictment on grounds that the disposal of this "crucial" evidence had prejudiced his defense.

Appellant's motion to dismiss was the subject of a lengthy pretrial hearing at which the Commonwealth presented evidence that it was KSP policy to dispose of physical evidence once a case is closed by court disposition. The dismissal of the 1978 indictment was a court disposition which closed this case. Thus, in disposing

of the evidence in 1981, Bellamy was following KSP policy. The trial judge made a finding on the record that the evidence had not been disposed of "for any willful or malicious or conniving motive to defeat or impair in any fashion, the defendant's due process rights."

■ Absent a showing of bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *Collins v. Commonwealth*, Ky., 951 S.W.2d 569, 572 (1997). The Commonwealth offered a plausible explanation for the disposal of the crime scene evidence and there was no evidence to the contrary. The trial judge found that the evidence was not disposed of in bad faith and there is nothing in the record to support a different conclusion. The laboratory report, which was rendered inadmissible by the combination of the destruction of the evidence and Bellamy's death, indicates that blood was found on Appellant's hands. Though it could not be proven that it was the victim's blood, the fact of the finding of that blood would have been admissible as circumstantial evidence. Presumably that was why Appellant initially moved to suppress the evidence. There is nothing in Bellamy's file or in the laboratory report regarding this evidence which could be described as exculpatory. The disposal of this evidence did not warrant dismissal of the indictment.

### III. PREINDICTMENT DELAY.

■ There is no statute of limitations with respect to the prosecution of a felony offense in Kentucky. KRS 500.050(1); *Reed v. Commonwealth*, Ky., 738 S.W.2d 818 (1987). Nor is the constitutional right to a speedy trial implicated in this case, U.S. Const. amend. VI, Ky. Const. § 11, since Appellant was not under indictment during the period from March 13, 1979 to April 17, 1997. "[O]nce charges are dismissed, the speedy trial guarantee is no longer applicable because 'with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending.' " *Commonwealth v. Miles*, Ky.App., 816 S.W.2d 657, 659 (1991) (quoting *United States v. MacDonald*, 456 U.S. 1, 9, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982)); *see also United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Brown v. Commonwealth*, Ky., 934 S.W.2d 242, 249 (1996); *Reed v. Commonwealth, supra*, at 820.

■ Nevertheless, unjustified and prejudicial preindictment delay may constitute a violation of due process and require dismissal. *Reed v. Commonwealth, supra*, at 820. Prejudice alone will not suffice. "[T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). Thus, dismissal is required only where there is both substantial prejudice and an intentional delay to gain tactical advantage. *Reed v. Commonwealth, supra*, at 820, citing *United States v. Lovasco* and *United States v. Marion*, both *supra*.

■ Here, the initial delay resulted from Appellant's successful motion to dismiss the 1978 indictment because he was incompetent to stand trial. The record does not reveal when Appellant regained his competency. Appellant claims in his brief that he was convicted of operating a motor vehicle under the influence of alcohol (DUI) on four occasions between March 20, 1989 and February 27, 1997, and that prior to accepting his 1997 guilty plea, the Boyd Circuit Court made a finding of competency. Appellant dubiously asserts that the 1997 finding of competency was inferentially retroactive to his first DUI conviction in 1989; for otherwise the intervening convictions could not have been used to enhance his 1997 conviction. Thus, he claims that knowledge of his regained competency should be imputed to

the Commonwealth as early as 1989. We disagree. Absent any evidence to the contrary, the Commonwealth was not charged with knowledge of Appellant's regained competency until he was adjudicated to be competent in 1997.

■ Regardless, the mere passage of time does not give rise to a constitutional violation *per se.* *United States v. Doe,* 149 F.3d 945, 948 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 457, 142 L.Ed.2d 409 (1998); *Aleman v. Honorable Judges of the Circuit Court of Cook County,* 138 F.3d 302 (7th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 162, 142 L.Ed.2d 132 (1998) (twenty-one year delay). In fact, the Commonwealth first considered seeking a reindictment of the murder charges after one of Appellant's previous DUI convictions in 1995. By that time, Bellamy was already deceased and the crime scene evidence already destroyed. There is nothing in the record of this case to support even an inference that any delay in seeking a reindictment was for the purpose of gaining a tactical advantage, or that it was otherwise the product of a bad faith motive. In the absence of an improper reason for the delay, mere proof of prejudice would be insufficient to support a dismissal. However, there was neither bad faith nor prejudice in this case.

■ Appellant's claim of prejudice from delay relates only to the loss of the crime scene evidence and the intervening deaths of Detective Bellamy and Dr. Neudorfer. Appellant does not posit how he would have benefited from the testimony of either Bellamy or Neudorfer. Bellamy's investigation consisted of gathering the crime scene evidence and interviewing witnesses. The witnesses all testified at trial and defense counsel used statements obtained by Bellamy for impeachment purposes. Bellamy's investigative report, which was furnished to Appellant in discovery, contains nothing which could remotely be regarded as exculpatory. In fact, it reflects that both Appellant and

Appellant's brother, Roy Kirk, had told Bellamy that the knife found on the floor near the victim's body belonged to Appellant. Roy Kirk also died prior to trial. Thus, the delay benefited Appellant to the extent that the only two witnesses who could prove that he was the owner of the murder weapon were both unavailable to testify.

Appellant claims Bellamy would have testified that there was no blood on Appellant's clothing at the crime scene and that was the reason his clothing was not confiscated as material evidence. The Commonwealth stipulated at trial that Appellant's clothing was not taken into evidence by Bellamy, and Detective Moore testified that a defendant's clothing normally is not confiscated as evidence unless the clothing contains something of evidentiary value, such as blood. Six witnesses who observed Appellant at the scene of the crime testified at trial (Mrs. Fannin, Mrs. Crisp, Mr. Eldridge and his two employees, and Coroner Neal), and none were asked whether they observed blood on Appellant's clothing. If proof of this fact was so crucial to his defense, surely Appellant could have elicited that information from one of the other crime scene witnesses. In fact, defense counsel probably decided that the stipulation, together with Moore's explanation, was as good as he could get on that issue.

Dr. Neudorfer's autopsy report merely reports his physical findings and his opinion as to the cause of death. Nothing in his report either inculpates or exculpates Appellant as the perpetrator of the crime. Clearly, the intervening deaths of Detective Bellamy and Dr. Neudorfer did not prejudice Appellant's defense.

### IV. AUTOPSY REPORT.

■ As noted earlier, Dr. Neudorfer, the pathologist who performed the autopsy, died prior to trial. A certified copy of his autopsy report was admitted during the testimony of Coroner Neal. It was

stipulated at trial that the report was properly authenticated pursuant to KRE 901(b)(7) and/or KRE 902(4). The only issue on appeal is whether the report was inadmissible as hearsay. Neal testified that the report was a public record and that a copy was maintained in the records of both his office and the office of the state medical examiner.

Appellant asserts that the report was inadmissible under the public records exception to the hearsay rule, because it is an investigative report prepared by or for a government agency. KRE 803(8)(B). However, we held in *Prater v. Cabinet for Human Resources*, Ky., 954 S.W.2d 954 (1997), that an investigative report of a government agency which is inadmissible under KRE 803(8)(A), (B) or (C) can be admitted under the business records exception, KRE 803(6), if it satisfies the latter rule's more stringent foundation requirements. 954 S.W.2d at 958. Neal testified that the autopsy was performed at his request in his official capacity as coroner of Boyd County, and that he was present and observed the autopsy examination as it was being performed by Dr. Neudorfer. He also testified that the autopsy report was prepared as part of the regular procedure, or protocol, necessary for the preparation of an accurate death certificate; and that both the death certificate prepared by Neal and the autopsy report prepared by Dr. Neudorfer were records maintained by him in the ordinary course of the business of the coroner's office.

Thus, the autopsy report was admissible under KRE 803(6), because (1) it was the regular practice of the coroner's office to cause such reports to be produced; (2) the report was made at or near the time of the autopsy; (3) by a person with knowledge (Neudorfer); and (4) it was kept as a record in the course of the regular conduct of the business of the coroner's office. Dr. Neudorfer's opinions contained in the report were admissible because those opinions would have been admissible had he been available to testify in court. KRE 803(6)(B).

## V. TRIAL JUDGE'S REMARKS.

■ At the beginning of voir dire, the trial judge engaged in a lengthy monologue designed to educate the prospective jurors as to important legal principles applicable to criminal trials, including the presumption of innocence and the burden of proof. After the judge had discussed these issues at some length, the prosecutor approached the bench and complained that the judge had placed too harsh a burden of proof on the Commonwealth and had thereby made it impossible for him to win this case. The judge then attempted to make amends by advising the jury as follows:

Now, as I indicated a moment ago, the defense does not have a burden to prove anything. They do not have a burden—a legal burden to disprove anything. That burden of proof is on the Commonwealth. But, the defense has the right to present evidence, if they so desire. So, what you'll be doing is, you'll be listening to both sides of the case, and you don't make up your mind in a case ever until it's submitted to you. But, if the Commonwealth does prove a case to you, and they prove the defendant guilty, and they prove it to you beyond a reasonable doubt, then the instructions and the law at that time will be for the Commonwealth, and then you will be looking for any evidence that's been put on by the other side to rebut that.

Defense counsel objected to that portion of the statement which indicated that once the Commonwealth presents a case sufficient to avoid a directed verdict of acquittal, the burden of proof shifts to the defendant. The judge then ceased his discussion of the burden of proof and moved on to another topic.

■ The judge's statement of the law with respect to the burden of proof was in error, since the burden of proof in a crimi-

nal case, except with respect to certain affirmative defenses, is always on the Commonwealth. KRS 500.070; *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Appellant, however, did not request either an admonition or a mistrial. He merely objected to the judge's remarks and the judge responded by changing the subject of his address to the jury. The written instructions given to the jury at the conclusion of the case accurately stated the presumption of innocence and placed the burden of proof on the Commonwealth to prove every element of the offense. The instructions cured any prejudice attributable to the judge's remarks to the jury, especially in light of the fact that Appellant did not request any other relief.

Accordingly, the judgment of conviction and the sentence imposed by the Boyd Circuit Court are affirmed.

All concur.