RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1249-MR

DANIEL STATON                                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE ANGELA MCCORMICK BISIG, JUDGE
ACTION NO. 21-CR-000013

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, JONES, AND KAREM, JUDGES.

KAREM, JUDGE: Daniel Staton appeals from a judgment sentencing him to a total of three years' imprisonment pursuant to a jury verdict. We affirm.

## I.    *Relevant Factual and Procedural History*

Staton resided in Tennessee but coached a paintball team which traveled across the country for competitions, including to Louisville, Kentucky.

Some members of the team were minors, including K.T. and K.B.[1]  K.T. and K.B. allege Staton sexually abused them during those trips.

In January 2021, Staton was indicted on ten counts of sexual abuse in the first degree, five counts pertaining to K.T. and five counts pertaining to K.B. The indictment alleges the abuse occurred between January 1, 2012, and December 31, 2015.  Furthermore, the indictment alleges each victim was less than sixteen **or** that Staton was in a position of special trust as to each victim.  *See* Kentucky Revised Statute (KRS) 510.110 ("(1) A person is guilty of sexual abuse in the first degree when:  . . . (c) Being twenty-one (21) years old or more, he or she . . . 1. Subjects another person who is less than sixteen (16) years old to sexual contact . . . [or] (d) Being a person in a position of authority or position of special trust, as defined in KRS 532.045, he or she, regardless of his or her age, subjects a minor who is less than eighteen (18) years old, with whom he or she comes into contact as a result of that position, to sexual contact . . . ."); KRS 532.045(a) (defining *position of authority* in relevant part as "the position occupied by a . . . coach . . . .").  It is undisputed that K.T. and K.B. were each born in 1997, so they each turned sixteen in 2013.  The indictment therefore covers periods of time when the

---

[1] Staton uses K.T. and K.B.'s full names in his opening brief.  However, "[w]e use initials to identify victims who were minors when the events occurred to protect their privacy." *Howard v. Commonwealth*, 595 S.W.3d 462, 466 n.1 (Ky. 2020).

alleged victims were under sixteen and periods of time when they were sixteen or above, including some months in 2015 when each was eighteen.

Staton did not file a motion for a bill of particulars under Kentucky Rule of Criminal Procedure (RCr) 6.22. However, the trial court's order memorializing Staton's arraignment required the Commonwealth to "furnish the Defendant with a Bill of Particulars, which advises the Defendant with specificity the circumstances of the alleged offense(s) . . . ." Trial Court Record (R.) at 16.

The Commonwealth provided a bill of particulars, which provides in its entirety as follows:

> On or between January 1, 2012 through December 31, 2015, Defendant subjected K.T. and K.B. to sexual contact on at least five occasions each. Defendant was the traveling paintball coach of [the] victims, who were under the age of 16 at the time. The abuse would occur while the team was visiting Jefferson County[, Kentucky] for a paintball tournament.

R. at 20.

The bill of particulars obviously provides scant information beyond that already contained in the indictment. Moreover, the bill asserts K.T. and K.B. were under sixteen but lists a four-calendar-year time period when the abuse occurred. Simply put, it is mathematically impossible for the victims, who were born in 1997, to have remained under sixteen at all times between January 1, 2012, and December 31, 2015. Instead, the listed time range (which mimics the

indictment) covers a period during which the victims' ages ranged from fourteen to eighteen (each turned fifteen in 2012 and eighteen in 2015). Once the victims turned sixteen in 2013, the only viable method listed in the indictment by which Staton could have abused them was pursuant to his having a position of special trust, and there is no method listed in the indictment by which Staton could have abused the victims after they turned eighteen. Though it is not stressed, the bill of particulars does note Staton was the victims' paintball coach.

In short, the bill of particulars essentially only tersely regurgitated the allegations in the terse indictment. Moreover, the bill of particulars did not facially comply with the trial court's order, which required the Commonwealth to provide a bill of particulars setting forth the "exact date, time and location of the offenses" and "the specific acts or conduct by which the Defendant . . . committed the offense(s) . . . ." R. at 16. Nonetheless, Staton did not object to the bill of particulars or seek additional relief, such as moving for a more detailed bill.

The charges progressed to a jury trial held in June 2022, at which both K.T. and K.B. testified. Some counts were dismissed at the close of proof, but six counts were submitted to the jury, two involving K.B. and four involving K.T. The jury acquitted Staton of one count involving each alleged victim but convicted him of the remaining four. The jury recommended Staton be sentenced to a total of three years' imprisonment (one year plus one year plus one year consecutively, to

-4-

run concurrently with the fourth one-year sentence).  After the trial court sentenced Staton in accordance with the jury's recommendation, he filed this appeal.

## II.     Analysis

### A. Preliminary Considerations

Before we begin our merits analysis, we must address Staton's noncompliant reply brief.  Kentucky Rule of Appellate Procedure (RAP) 31(G)(2)(b) provides in relevant part that "[a]n appellant's reply brief shall not exceed 1,750 words or 4 pages . . . ."  Staton's reply brief is eight substantive pages long.

Staton's brief contains twice the allowed number of pages, but that does not automatically make it non-compliant because it could still be within the 1,750 word maximum.  Anticipating such a situation, RAP allows a party who submits a brief longer than the maximum number of pages to nonetheless certify that the brief is compliant by submitting a word-count certificate attesting that the brief falls below the maximum word count.  But Staton's reply brief does not contain a word-count certificate.  *See* RAP 31(G)(1) (requiring Staton to submit a word-count certificate "in conformity with RAP 15."); RAP 15(C) (providing that a brief which exceeds the page limit but is within the word-count limit "must include a certificate by the attorney . . . that the brief falls within the relevant word

limit. The certificate must also state the number of words in the portion of the brief subject to the word limit.").

The upshot is that Staton's reply brief is non-compliant. RAP 31(H)(1) permits us to strike a brief "for failure to substantially comply with the requirements of these rules." *Accord, e.g.*, *Gasaway v. Commonwealth*, 671 S.W.3d 298, 310 (Ky. 2023) (holding that a party's failure "to conform to the appellate rules justifies the striking of the brief under RAP 31(H)(1)."). Submitting a brief that contains twice the maximum permitted pages without providing a word-count certificate showing that the brief falls within the maximum number of words is a failure to substantially comply with RAP.

Nonetheless, we leniently decline to strike the reply brief since the Commonwealth – the opposing party whose interests are aggrieved by the noncompliance – raised no objection to it. However, we warn all attorneys performing appellate work that our tolerance for accepting non-compliant briefs is rapidly reaching its limits. Attorneys are obligated to scrutinize RAP and follow scrupulously its mandatory requirements. Any future failure to comply substantially with RAP is likely to result in the imposition of sanctions.

Two final prefatory notes are in order. First, we have carefully considered the parties' briefs and have concluded any argument contained in them not discussed herein is irrelevant, redundant, or otherwise lacks merit. Second, our

analysis does not entirely track that utilized by the trial court or the parties, but our Supreme Court has forcefully commanded that "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

### B. Preindictment Delay

Staton's first argument is that he was prejudiced by the Commonwealth's delay in obtaining an indictment. We disagree.

Staton correctly notes that the indictment was issued in 2021 but alleges abuse occurring between 2012 and 2015. Even if we accept that lengthy gap resulted in diminished memories and the unavailability of some evidence, Staton is not entitled to relief.

Though oddly not stressed in the parties' briefs, "[t]here is no statute of limitations with respect to the prosecution of a felony offense in Kentucky." *Kirk v. Commonwealth*, 6 S.W.3d 823, 826 (Ky. 1999); KRS 500.050(1) ("Except as otherwise expressly provided, the prosecution of a felony is not subject to a period of limitation and may be commenced at any time."). As our Supreme Court has explained, "[a] legislative determination has been made that felony charges may be brought at any time; that the interest of the Commonwealth in the prosecution of crime outweighs the benefits normally associated with statutes of

limitation; and that there is no right to be free of felony prosecution by the mere passage of time." *Reed v. Commonwealth*, 738 S.W.2d 818, 820 (Ky. 1987). Accordingly, standing alone, the roughly six-to-nine-year gap between his alleged felonious criminal conduct and the issuance of the indictment does not entitle Staton to relief.

Instead, a preindictment delay entitles a defendant such as Staton to relief only if the delay is "unjustified and prejudicial . . . ." *Kirk*, 6 S.W.3d at 826. That high standard requires Staton to demonstrate "both substantial prejudice and an intentional delay to gain tactical advantage." *Id.* "Unless Appellant can satisfy *both* requirements, his argument fails." *Shane v. Commonwealth*, 243 S.W.3d 336, 342 (Ky. 2007).

We are skeptical that Staton has satisfied the substantial prejudice requirement. He stresses the alleged loss of evidence due to the delay, such as no longer accessible electronic records. However, "[t]he mere possibility that some evidence which was unavailable at trial would have been available at an earlier time is insufficient." *Reed*, 738 S.W.2d at 820. Our Supreme Court has deemed "speculative" a criminal defendant's similar claim that he was prejudiced "because by the time this matter was prosecuted, hospital and school records that could have assisted the defendant and disprove the allegations of the prosecuting witness were lost or destroyed." *Woolfolk v. Commonwealth*, 339 S.W.3d 411, 424 (Ky. 2011).

Nonetheless, we need not definitively determine whether Staton has shown sufficient prejudice because it is plain that he has not met the intentional delay prong. Staton has not offered *any* evidence to show the Commonwealth intentionally delayed obtaining an indictment for tactical reasons. Staton speculates the Commonwealth had such a nefarious motive, but his self-serving conjecture is insufficient. Though the opinion was issued under a different context, over a century ago Kentucky's highest court held that "[m]ere conjecture or suspicion is not sufficient to constitute evidence." *Gay v. Gay*, 183 Ky. 238, 209 S.W. 11, 14 (1919). That principle still applies.

By contrast, the Commonwealth has offered two facially neutral reasons for the delay. First, the victims did not immediately report the alleged abuse. That is not surprising since K.B. and K.T. were both minors when the alleged abuse occurred. The delay in reporting the abuse by the alleged victims is wholly outside the Commonwealth's control. Second, the resulting investigation was delayed when the officer assigned to it was reassigned. The United States Supreme Court has held that "investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused," so "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse

-9-

of time." *United States v. Lovasco*, 431 U.S. 783, 795-96, 97 S. Ct. 2044, 2051-52, 52 L. Ed. 2d 752 (1977) (internal quotation marks and citations omitted).

In sum, "[t]here is nothing in the record of this case to support even an inference that any delay in seeking [an indictment] was for the purpose of gaining a tactical advantage, or that it was otherwise the product of a bad faith motive. In the absence of an improper reason for the delay, mere proof of prejudice would be insufficient to support a dismissal." *Kirk*, 6 S.W.3d at 827.

### C. Cross-Examination of K.T.

Staton next argues the trial court erred by "wrongfully curtail[ing]" his cross-examination of K.T. Appellant's Opening Brief, p. 6 (emphasis omitted). Frankly, Staton's argument is not easy to follow, as highlighted by the fact that Staton asserts in his reply brief that the Commonwealth has misconstrued it. Any improper curtailment is difficult for us to discern since, as our review of the trial demonstrates, the trial court did not rule on an objection or prevent Staton's counsel from asking any questions of K.T.

To grasp what we perceive to be at issue from Staton's brief, we must relate K.T.'s testimony in detail. According to K.T., the first abuse occurred when he shared a bed with Staton at Staton's home in Tennessee. K.T. told the jury that he awoke in the middle of the night to find that Staton had placed his hand inside K.T.'s underwear and was touching his (K.T.'s) penis and testicles. K.T. testified

-10-

that the same basic conduct recurred about a week or two later when he shared a bed with Staton at a paintball team member's home in Louisville.

K.T. also testified about another alleged incident of abuse that occurred at Staton's residence in Tennessee. K.T. stated Staton was nude in bed with an erection, which Staton asked him (K.T.) to touch. K.T. testified that Staton grabbed K.T.'s hand and briefly brought it toward his (Staton's) penis. According to K.T., Staton wanted to compare erect penises with K.T. K.T. said he tried to defuse the situation by joking about the curvature in Staton's penis.

In his cross-examination, Staton's counsel went through much of K.T.'s testimony and then asked: "That's not the same story you told law enforcement, is it?" Video, 6/22/22, 2:51:25 *et seq.* K.T. began answering that his testimony was "similar" to what he had told law enforcement and that he had recalled more details in therapy when the Commonwealth interrupted and asked to approach the bench. A roughly eleven-minute bench conference ensued.

At the bench, the Commonwealth stated that K.T. had told Tennessee authorities more details than he gave to Louisville police, such as having seen Staton's allegedly curved penis and having felt Staton's erect penis against his (K.T.'s) back. The Commonwealth asserted the questions being asked by Staton's counsel could lead it to ask K.T. on redirect examination about his discussions with Tennessee authorities or to sexual misconduct charges pending against Staton in

-11-

Tennessee. Staton's counsel reiterated that K.T. had not told the Louisville police some of the details he provided to the jury.

The trial court stressed that it did not want the jury to be misled about whether K.T.'s trial testimony was different from anything he had related to the police. Accordingly, the court cautioned that if Staton's counsel continued to assert that K.T. was adding details at trial that he had never disclosed to Louisville police then, on redirect, the Commonwealth could ask K.T. about his interactions with Tennessee authorities and the Tennessee charges.[2]

Importantly, the court did not prevent Staton's counsel from asking any questions. The court also did not rule on any objections – in fact, no party affirmatively raised one. Instead, the court merely cautioned that it did not want to mislead the jury and so Staton's counsel's pursuing a "you never told the police this before, did you?" line of questions would likely lead to a discussion on redirect of Staton's discussions with the Tennessee authorities and charges pending against Staton in Tennessee.

When Staton's cross-examination of K.T. resumed, counsel did not further pursue the prior line of questioning. During the Commonwealth's redirect,

---

[2] The parties have not pointed to where in the record before us we may view any charging documents from Tennessee, or any documents showing the resolution of those charges.

K.T. testified without objection that the abuse by Staton occurred in numerous states besides Kentucky, including Tennessee.

It is difficult to discern how the trial court curtailed cross-examination when it did not prevent counsel from asking any questions. As we understand it, Staton argues the trial court should have let him ask K.T. why he had not provided details in his testimony to Kentucky law enforcement without running the risk that the Commonwealth would be allowed to ask on redirect about K.T.'s interactions with Tennessee authorities or the Tennessee charges.

We review a trial court's evidentiary decision deferentially, utilizing the abuse of discretion standard. *See, e.g.*, *Bounds v. Commonwealth*, 630 S.W.3d 651, 659 (Ky. 2021). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (internal quotation marks and citation omitted). But there is no obvious evidentiary decision for us to review.

For over a century, Kentucky precedent has held that "it is not within the province of appellate courts to decide abstract, hypothetical, or moot questions, disconnected from the granting of actual relief[.]" *Benton v. Clay*, 192 Ky. 497, 233 S.W. 1041, 1041 (1921) (internal quotation marks and citations omitted). The unique procedural posture here leaves open the question of what we may properly review, despite Staton's erroneous assertion in his reply brief that the issue "was

preserved by objections made at the bench conference . . . ." Reply Brief, p. 2. The trial court did not exclude any evidence and the expected questions about K.T.'s interactions with Tennessee law enforcement on redirect were never asked.

We also note that Staton notes the transcript of K.T.'s interview with a Louisville police officer was "[t]he proposed impeachment material" he submitted into the record by avowal and "[t]he exclusion of this evidence was an abuse of discretion and was prejudicial error." Appellant's Opening Brief, p. 9. Staton cites to no authority to buttress his claim that the trial court somehow erred by not allowing him to introduce into the record the entire transcript of K.T.'s interview with the Louisville police.

In short, it is exceedingly difficult to discern the root of Staton's argument. Nonetheless, even if we leniently construe Staton's argument as being that the trial court made some sort of evidentiary error, we affirm.

The trial court essentially only stated that it would not allow the jury to be misled as to whether K.T. was relating information during the trial that he had not previously disclosed to law enforcement. "There is no gainsaying that arriving at the truth is a fundamental goal of our legal system." *United States v. Havens*, 446 U.S. 620, 626, 100 S. Ct. 1912, 1916, 64 L. Ed. 2d 559 (1980). "Cross-examination is a time-tested and unique method of assisting in the quest for truth." *Kaelin v. City of Louisville*, 643 S.W.2d 590, 592 (Ky. 1982). Leaving a

jury with a false impression of whether a witness was telling the jury information the witness had never told law enforcement runs entirely contrary to that "quest for truth." The trial court therefore did not err by informing the parties that it would allow the Commonwealth to question K.T. about what he told Tennessee authorities to eliminate any potential deception of the jury.

This issue mirrors that in *King v. Commonwealth*, 554 S.W.3d 343 (Ky. 2018), *overruled on other grounds by Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023). In *King*, a minor victim of child abuse was twice interviewed at a child advocacy center (CAC), once in 2014 and then in 2015. During the 2014 interview, the victim stated that she had been sodomized once; however, at the trial the victim testified that she had told the CAC interviewer "this had happened twice." *Id.* at 358. The trial court then permitted the defense to play "a large portion of the 2014 CAC tape recording for the jury" which served to "impeach any inconsistencies" in the victim's trial testimony[.]" *Id.* at 359-60.

The trial court later allowed the Commonwealth to play the 2015 CAC interview as a prior consistent statement, a decision our Supreme Court affirmed. According to our Supreme Court, "defense counsel pursued a line of questioning that implied [the victim] had not previously disclosed any sexual abuse by King, and that her testimony about the abuse . . . had changed. . . . The trial court did not err in finding that [the victim's] credibility had been attacked

sufficiently to allow the Commonwealth to introduce prior consistent statements pursuant to [Kentucky Rule of Evidence] KRE 801A(a)(2)." *Id.* at 361.

The same holds true here. Staton attacked K.T.'s credibility by asking questions designed to, essentially, leave the impression that K.T. was making up allegations because his testimony delved into specifics that he had not previously disclosed to law enforcement. The trial court was thus correct when it warned Staton's counsel that it would permit the Commonwealth on redirect to ask K.T. about prior consistent statements he had given to the Tennessee authorities.

*D. Therapy Records*

Staton next argues the trial court erred by denying his mid-trial request for the victims' therapy records. We disagree.

K.B. testified repeatedly that he had been in therapy, but Staton did not ask for K.B.'s therapy records until K.B. described his therapist on redirect examination as being a "source of all truth for what I was dealing with." After a few additional questions and answers by K.B., Staton's counsel asked to approach the bench. At the bench conference, Staton's counsel stated he had "no idea" the Commonwealth would rely so much at trial on "this" (presumably meaning the victims being in therapy) and moved for production of K.B.'s therapy records. The Commonwealth responded that Staton had known about K.B. being in therapy

-16-

before trial because K.B. mentioned it in his recorded interviews (presumably with Louisville police).

The Commonwealth argued Staton could have moved for production of the records prior to trial, which could have resulted in an *in camera* review of them by the trial court. The Commonwealth noted that it had never possessed the records. Staton's counsel said that the defense had requested the records from the Commonwealth, but the Commonwealth responded that it had told defense counsel to file an appropriate motion to obtain the records because they were not in the Commonwealth's possession. The Court denied Staton's request for the records.

Staton admits in his brief that he did not file a pretrial motion to obtain the records, and the parties have not shown where in the record before us we may view the therapy records at issue. Therefore, we have no way of meaningfully reviewing the records to determine whether Staton was entitled to them. We cannot properly analyze the propriety of the trial court's decision to deny Staton access to the records in an evidentiary vacuum. Albeit unpublished and thus cited solely as an illustration of a similar occurrence, our Supreme Court reached the same conclusion. *Sprows v. Commonwealth*, No. 2018-SC-000374-MR, 2019 WL 2462489, at *6 (Ky. Jun. 13, 2019) ("[W]e are unable to properly analyze this issue because the appellate record does not contain the Centerstone records which are the subject of this argument. In the absence of those records, we are unable to

assess whether Sprows was prejudiced by the trial court's failure to undertake an *in camera* review of them. . . .  As such, in a situation such as this where the trial court denies a motion for an *in camera* review of a witness's mental health records, in order to properly preserve the issue for appellate review, it is incumbent upon the defendant to nevertheless assure that those records are filed into the trial court record and transmitted to the appellate court at the time of the appeal.").

Even if we were somehow able to review the issue on the merits, we would affirm the trial court.  Our Supreme Court has held that "the Compulsory Process Clause affords a criminal defendant the right to obtain and present exculpatory evidence, including impeachment evidence, in the possession of a third party that would otherwise be subject to the psychotherapist-patient privilege." *Commonwealth v. Barroso*, 122 S.W.3d 554, 561 (Ky. 2003).  *See* United States Constitution, Sixth Amendment (providing in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."); KY. CONST. § 11 (similarly providing in relevant part that "[i]n all criminal prosecutions the accused has the right . . . to have compulsory process for obtaining witnesses in his favor.").  But Staton failed to follow *Barroso*'s mandatory process for obtaining therapy records.

Even before we address Staton's failure to follow *Barroso*, we note that we cannot accept his argument that he was blindsided by the victims' mention

-18-

of therapy at trial. Staton has not rebutted the Commonwealth's assertion at trial that therapy was mentioned in pretrial discovery provided by the Commonwealth. Indeed, it is difficult to understand how Staton could have been surprised at trial by the victims' discussion of therapy when Staton's counsel submitted a pretrial request for therapy records to the Commonwealth. How can you be surprised by something you knew about sufficiently to have previously requested? *Richardson v. Commonwealth*, 161 S.W.3d 327, 330 (Ky. 2005) (affirming a trial court's decision regarding cross-examining an expert about a victim's mental health records because, among other concerns, the defendant "was in possession of Dr. Spivak's report for over a year prior to trial and, thus, was aware that [the victim] suffered from several psychiatric disorders. However, defense counsel neither sought review of [the victim's] records nor produced any evidence that the records contained exculpatory evidence relevant to [the victim's] credibility.").

Even more importantly, Staton did not submit a motion for the records prior to trial. Staton has not cited authority which required the Commonwealth to obtain, and then provide, privileged records[3] in discovery. RCr 7.24, which governs discovery, repeatedly refers to the defendant receiving matters "in the

---

[3] *See* KRE 507(b) ("A patient . . . has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purpose of diagnosis or treatment of the patient's mental condition, between the patient, the patient's psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.").

possession, custody or control of the Commonwealth . . . ." It appears undisputed that the Commonwealth never possessed or controlled the relevant therapy records.

This leads directly to the specialized process in *Barroso* for a criminal defendant to obtain mental health records of witnesses. In the words of our Supreme Court, "*Barroso* mandate[s] that certain procedures must be followed before such confidential information is disclosed." *Richardson*, 161 S.W.3d at 329. Staton failed to comply with those mandatory procedures.

The *Barroso* protocol is as follows: "the proponent of the disclosure order bears the initial burden of identifying specific records, or at least specific institutions or medical professionals in possession of such records. The proponent must then establish a reasonable belief that such records contain exculpatory information." *White v. Willett*, 456 S.W.3d 810, 813 (Ky. 2015). The key to discoverability is whether the records are likely to "contain evidence probative of the witness's ability to recall, comprehend, and accurately relate the subject matter of the testimony[.]" *Barroso*, 122 S.W.3d at 563.

Here, we agree with the trial court that Staton has not made that preliminary showing. The mere fact that a witness is receiving mental health therapy is insufficient to impeach his or her credibility. *Barroso*, 122 S.W.3d at 563. Instead, a court faced with a request for mental health records should consider factors such as "the nature of the psychological problem . . . . For

example, a mental illness that causes hallucinations or delusions is generally more probative of credibility than a condition causing only depression, irritability, impulsivity, or anxiety." *Id.* at 562-63 (quoting *People v. Anderson*, 25 Cal.4th 543, 106 Cal.Rptr.2d 575, 22 P.3d 347, 391 (2001) (Kennard, J., concurring)). Staton has not made a preliminary showing that K.B. or K.T. suffered from hallucinations or delusions; instead, it appears undisputed that each suffered from mental health concerns akin to depression or anxiety. Thus, the trial court did not abuse its discretion by denying Staton's request for the records. *Thompson v. Coleman*, 545 S.W.3d 281, 284 (Ky. 2018) (holding that a trial court's decision to conduct an *in camera* review of therapy records is discretionary).

Indeed, since no party had possession of the records, the process of obtaining them, and then reviewing them *in camera*, would have required a recess of an unknown duration. Days? Weeks? It is not even clear who the therapists are or where they are located, so it is possible obtaining the records could have been a lengthy, burdensome process. *See Commonwealth v. Shaw*, 600 S.W.3d 233, 239-40 (Ky. 2020) (setting forth a process for a defendant to obtain mental health records when "the specific time frame and relevant information is known, but the medical provider is not," the first step of which requires the defendant to file a motion). Adding such an uncertain delay, potentially lengthy, in the middle of the trial would have been unfair to everyone involved, especially the jurors.

-21-

We reiterate that *Barroso*'s protocol requires Staton to file a motion seeking the records prior to trial. He did not. A midtrial delay would have been entirely avoidable if Staton had followed *Barroso*.

Finally, Staton ignores the *in camera* review stage and instead leaps to arguing he was entitled to receive the records. We reject that sweeping argument. Even if he had properly complied with *Barroso*, which he did not, Staton would only be entitled to view the records if the court had first reviewed them *in camera* and had concluded they contained exculpatory information sufficient to allow Staton to view them.

In short, under these unique facts, we affirm the trial court's denial of Staton's request to pause the trial indefinitely to obtain K.B.'s (and, presumably, K.T.'s) therapy records. As our Supreme Court held in a similar scenario, "disclosure of [the victim's] confidential mental health information for the first time at trial would not have been appropriate. Had Appellant wished to explore that avenue of evidence, he was required to follow the procedure mandated by . . . *Barroso*. Appellant failed to do so. As such, the trial court did not err . . . ." *Richardson*, 161 S.W.3d at 330.

### E. *Overbroad Indictment and Insufficient Bill of Particulars*

Staton next argues "[t]he Commonwealth used a broad charging device with a very broad time span and no detailed descriptions. The prosecution

-22-

used this to their advantage at trial, and there was not fair notice to Staton of what he needed to be prepared to defend against." Appellant's Opening Brief, p. 13. He adds that "the Bill of Particulars did not do anything to enhance or clarify the indictment. In fact, it alleged that all counts involved someone under the age of 16, which was not true." *Id.* This section of Staton's brief contains multiple, loosely related sub-arguments, which we shall review individually.

Whether Staton properly and timely preserved this issue is debatable. Staton cites to no motions he filed before trial seeking to amend the indictment or for a more particular bill of particulars. Instead, Staton raised these issues immediately before *voir dire*. Regardless, Staton is not entitled to relief even if we leniently assume (solely for the sake of argument) that he adequately preserved his sundry complaints about the indictment and bill of particulars.

We agree with Staton that the indictment is bare bones. But an indictment is not required to contain the sort of detailed factual allegations Staton seems to desire. Instead, "all that is necessary for an indictment properly to charge an offense is to name the offense." *Parker v. Commonwealth*, 291 S.W.3d 647, 656 (Ky. 2009) (internal quotation marks and citation omitted). In other words, an indictment "is not infirm and subject to dismissal solely because it lacks a detailed recitation of the underlying facts." *Id.*

The indictment tracked KRS 510.110, the statute governing sexual abuse in the first degree. "Nothing else was required." *Parker*, 291 S.W.3d at 656.

The indictment's minimal factual recitation did not leave Staton adrift on how to prepare for trial. As our Supreme Court has held, "[t]he protocol for a defendant who desires more information is to serve a motion for a bill of particulars." *Id.* And, on its own initiative, the trial court required the Commonwealth to provide Staton with a bill of particulars – which it did.

Staton now claims the bill of particulars was insufficient. We agree with Staton that it was imperfect. Indeed, the bill of particulars did not contain all of the information required by the trial court's order. But Staton stood mute after receiving the essentially unparticularized bill. Staton has not shown where he ever objected to the bill of particulars he now decries or asked for it to be supplemented. Thus, Staton waived the right to object to any infirmities in the bill of particulars. *Buster v. Commonwealth*, 381 S.W.3d 294, 302 (Ky. 2012).

More broadly, Staton argues the Commonwealth did not adhere to the bill of particulars at trial. Remember, the indictment charged Staton with sexual abuse in the first degree under two alternate methods: by subjecting K.T. and K.B. to sexual contact when each was less than sixteen (KRS 510.110(1)(c)1.) or subjecting K.T. and K.B. to sexual contact when Staton was in a position of trust or authority over each, and they were each under eighteen (KRS 510.110(1)(d)). The

indictment thus placed Staton on notice that the Commonwealth could rely on either method at trial – or both.

As it turned out, the jury instructions focused solely on Staton being in a position of special trust regarding the victims, not on either being under sixteen. Staton now argues that was improper because the Commonwealth limited itself at trial to prosecuting the case under a theory that the victims were each under sixteen because that is what was mentioned in the bill of particulars.

We accept, as a general proposition, that "[w]hen a bill of particulars is furnished, the Commonwealth is bound by its answer and must prove what it has set forth." 8 *Ky. Prac. Crim. Prac. & Proc.* § 21:81 (6th ed. Nov. 2023 Update). However, we discern no reversible errors here regarding the proof at trial *vis-à-vis* the bill of particulars.

First, the bill of particulars contains a patent error when it states the victims were less than sixteen during the entire four-year period listed in the bill. As previously stated, that assertion was mathematically impossible. And Staton, by virtue of his unrebutted close relationship with each victim as their coach and a mentor of sorts, knew or reasonably should have known their approximate ages. Second, the bill of particulars does mention that Staton was each victim's paintball coach – *e.g.*, he was in a position of special trust or authority as to each as an adult coach is statutorily defined as a position of authority in KRS 532.045(1)(a).

-25-

The takeaway is that the bill of particulars was imperfect, but it did not meaningfully alter the allegations in the indictment since it referred, at least implicitly, to both methods of abuse listed in the indictment.

In any event, Staton's defenses "were complete denials" of misconduct, so his "defenses would not have been any different if the bill of particulars had been flawless." *Schambon v. Commonwealth*, 821 S.W.2d 804, 809 (Ky. 1991). In sum, we cannot endorse the bill of particulars but conclude Staton is not entitled to any relief stemming from its imperfections.

Next, Staton argues the indictment was overly broad. But we do not have access to a transcript of the grand jury proceedings and so cannot discern what information was presented to it which culminated in the issuance of the ten-count indictment. The fact that the indictment covers a time range of over four years is not fatal, nor is it surprising that minor victims of allegedly frequent sexual abuse cannot recall with mathematical precision the dates upon which the abuse was inflicted. As our Supreme Court has held in a case involving charges of sexual misconduct against a minor where the indictment alleged the act occurred within a seven-year period (considerably longer than the period covered by the indictment at hand):

> Further, it is not necessary that a child victim of sexual abuse give specific dates that the offenses occurred. In fact, "[i]t would be wholly unreasonable to expect a child of such tender years to remember specific dates,

-26-

especially given the long time period over which the abuse occurred." *Farler v. Commonwealth*, 880 S.W.2d 882, 886 (Ky. App. 1994). This Court has long held that in sexual abuse cases, especially those involving children, if "time is not a material ingredient of the offense . . . , all that is necessary in the indictment in this respect is that it should appear from its averments that the offense was consummated before the finding of the indictment." *Salyers v. Commonwealth*, 255 S.W.2d 605, 606 (Ky. 1953).

*Applegate v. Commonwealth*, 299 S.W.3d 266, 270-71 (Ky. 2009). The exact dates of the abuse were not "material ingredient[s]" of the offenses here since the instructions focused solely on a time when each victim was less than eighteen.

We cannot discern any obviously intentional overcharging from our distant vantage point. Staton has presented no tangible proof of overcharging. Self-serving speculation is not evidence. *Gay*, 209 S.W. at 14.

Staton presents a considerably thornier issue when he argues he is entitled to a new trial because the Commonwealth called the victims "honest" in its closing argument. Specifically, the Commonwealth stated:

> You saw how that proof came out, how they [K.T. and K.B.] remembered things. We had ten counts, now we have less. There were some that are dismissed. Ah, one for [one victim] because he cannot recall at this time. There were three for [the other victim]. And they were honest with that. They were hon - if they were lying, why wouldn't they just make up something, have all ten counts? They were honest in their testimony of what they remembered, and what they didn't remember we had to dismiss. We had to dismiss.

-27-

Video, 6/24/22, 12:48:26-12:48:55. Surprisingly, the Commonwealth does not meaningfully address this argument in its brief.

Staton admits in his reply brief that he did not timely object to the Commonwealth's comments about the victims' honesty. In his reply brief, he asks for palpable error review. *See* RCr 10.26. "A party claiming palpable error must show a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Chavies v. Commonwealth*, 374 S.W.3d 313, 322-23 (Ky. 2012). Our Supreme Court has memorably described an error as palpable if it is "so egregious that it jumps off the page . . . and cries out for relief." *Id.* at 323 (internal quotation marks and citation omitted). Stated succinctly, an error is palpable if it "was shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006). The comments by the Commonwealth here were improper but fall short of that stringent standard.

Our Supreme Court has held that:

> A prosecutor may not personally vouch for the credibility of a witness. Improper vouching occurs when the prosecutor inserts the prosecutor's own personal belief to shore up the credibility of a witness. But a prosecutor may rebut any attack on the credibility of a witness made in the defense's closing arguments.
>
> We reverse for unpreserved issues of prosecutorial misconduct in the form of vouching, such as alleged here, but only if they are flagrant. In deciding if the improper statements are flagrant enough to require reversal, we consider if they tend to mislead the jury, cause prejudice

to the accused, are isolated or extensive, deliberately or accidentally placed before the jury, and the strength of the evidence against the accused.

. . . In *Hall v. Commonwealth*, [551 S.W.3d 7, 18 (Ky. 2018)] we stated "generally, improper vouching involves either blunt comments, such as, 'I think [the witness] was candid. I think he is honest,' or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony.'"

*Towe v. Commonwealth*, 617 S.W.3d 355, 363 (Ky. 2021) (footnotes and citations omitted) (citation in brackets added; other usage of brackets in original).

Here, the trial court had read the indictment to the jury in *voir dire* and read the instructions to the jury immediately prior to closing arguments, so the jury knew four counts had been dismissed. But any attempt by the Commonwealth to explain those dismissals should have been narrowly tailored to only explain that the charges had been amended to reflect the evidence presented at trial. Unfortunately, the Commonwealth strayed beyond that purpose by characterizing K.B. and K.T. as honest. Bluntly characterizing the victims as having been "honest" constituted improper prosecutorial vouching.

Turning to the factors outlined in *Towe*, all indications are that the comments were made intentionally. That factor weighs in favor of Staton. However, we do not perceive that the comments misled the jury or prejudiced Staton. The comments were isolated as they took up only roughly thirty seconds

-29-

out of a five-day trial.  It is plain that the comments did not prejudice Staton in the eyes of the jury since it acquitted him of two counts and recommended a lenient sentence.  *Brewer v. Commonwealth*, 206 S.W.3d 343, 351 (Ky. 2006) (rejecting a claim of prosecutorial misconduct based on improper statements in closing argument because, among other factors, the jury recommended a lenient sentence). Those factors weigh in favor of the Commonwealth.  And the evidence against Staton was strong in the sense that both victims unequivocally testified to being abused by him repeatedly, but we cannot deem the evidence overwhelming given the lack of supporting scientific or physical evidence and the acquittal on some charges.  That factor is thus essentially neutral as it does not strongly favor either Staton or the Commonwealth.

There is therefore a state of relative equipoise regarding the *Towe* factors, with some favoring Staton and some favoring the Commonwealth.  As such, we cannot conclude that the vouching comments were so egregious and prejudicial as to constitute a manifest injustice.

F.  *Jury Instructions*

Staton next argues the jury instructions created a unanimity problem. We disagree.

Six total counts of sexual abuse in the first degree were submitted to the jury, two involving K.B. and four involving K.T.  Because there were multiple

counts of the same offense involving the same victim(s), to avoid a unanimity problem the trial court was "obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky. 2008). Staton's arguments to the contrary notwithstanding, the instructions here did so.

Each instruction contained a separate date range. For example, one instruction involving K.B. listed the abuse as occurring between January 1, 2014, and December 31, 2014, while another listed the abuse as occurring between May 1, 2015, and August 31, 2015. We reject Staton's argument that the time periods listed in the instructions were "not specific enough for the jury to agree unanimously beyond a reasonable doubt on a specific instance [of abuse]." Appellant's Opening Brief, p. 16. The time periods in the instructions generally were tailored to the testimony presented at trial and a victim, especially a minor victim, is not required to recall with absolute precision the precise date upon which the abuse occurred.

Our Supreme Court has found no error in instructions which contained a one-year date range even though those instructions did not "detail the specifics of each particular instance . . . such as the setting or the exact conduct engaged in,

[because] such detail is not required." *Bennington v. Commonwealth*, 348 S.W.3d 613, 623 (Ky. 2011). Thus, there cannot be inherent error in a jury instruction alleging the crime occurred during a one-year time period or less. Four of the six counts contained a time period less than a year, so those time periods do not entitle Staton to relief. And the jury acquitted Staton of the remaining two counts which listed a lengthier time range.

Moreover, the heading of each instruction contained additional distinguishing information. For example, the heading of the first count involving K.B. stated: "At [a paintball teammate's] House Bedroom 3 – Baby Was In the Room[.]" R. at 129 (emphasis and all capitalizations omitted). The heading of the second count involving K.B. stated: "At [a paintball teammate's] House Bedroom 1 – When There Was A Barbecue[.]" R. at 131 (emphasis and all capitalizations omitted). Similar distinguishing characteristics were listed in the captions of each of the four counts involving K.T. Therefore, we reject Staton's argument that the instructions "did not adequately distinguish between the counts to guarantee a unanimous verdict on each count." Appellant's Opening Brief, p. 15. "There is no uncertainty as to which crime the jury convicted of on each count and thus, no deprivation of a unanimous verdict." *Bennington*, 348 S.W.3d at 623.

## G. Directed verdict

We reject Staton's argument that he was entitled to a directed verdict.

Under Kentucky's familiar directed verdict standards:

> a trial court's denial of a defendant's motion for directed verdict should not be reversed unless the appellate court determines it would be clearly unreasonable for a jury to find guilt. When confronted with a motion for directed verdict, the trial court must assume the truth of the Commonwealth's evidence and draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. Questions regarding the weight of the evidence and the credibility of witnesses are reserved to the sole province of the jury.

*Stieritz v. Commonwealth*, 671 S.W.3d 353, 359 (Ky. 2023) (internal quotation marks and citations omitted). In sum, a directed verdict is improper "[s]o long as the Commonwealth produces more than a mere scintilla of evidence to support the charges[.]" *Taylor v. Commonwealth*, 617 S.W.3d 321, 324 (Ky. 2020).

It is beyond question that Staton was in a position of authority or special trust regarding K.T. and K.B. and that each was less than eighteen years old during the relevant time periods mentioned in the instructions. The remaining factor under KRS 510.110(1)(d) requires the Commonwealth to show that Staton subjected each victim to "sexual contact . . . ." In relevant part, *sexual contact* is defined in KRS 510.010(7)(a) as "the touching of a person's intimate parts . . . if that touching can be construed by a reasonable person as being done . . . [f]or the purpose of sexual arousal or gratification of either party[.]" Clearly, touching the penis or scrotum would constitute touching a person's intimate parts.

The real question, therefore, is whether there was sufficient evidence presented about sexual gratification. Absent a complete confession by a criminal defendant, the Commonwealth will not be able to provide direct proof that a defendant touched another person's genitalia for purposes of sexual arousal or gratification. Therefore, precedent has long been held in cases involving allegations of sexual misconduct that "[i]ntent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence." *Anastasi v. Commonwealth*, 754 S.W.2d 860, 862 (Ky. 1988). Indeed, even when the defendant testified and "denied any sexual contact with the victims, let alone any touching for the purpose of his sexual gratification[,]" and the victims testified that the touching of their intimate parts felt "'bad,'" a jury permissibly inferred the touching was done for the purpose of sexual gratification. *Tungate v. Commonwealth*, 901 S.W.2d 41, 42 (Ky. 1995). Even grabbing another person's buttocks repeatedly and showing "unrelenting interest" in the other person was sufficient to allow an inference that the touching was done for sexual gratification. *Edmondson v. Commonwealth*, 526 S.W.3d 78, 87 (Ky. 2017).

K.T. and K.B. each testified that Staton was insistent about sharing a bed with them and touched their respective bare penises. K.T. testified that, at least on one occasion, Staton requested that they compare erect penises. The

victims testified that Staton, essentially, showed "unrelenting interest" in them. *Edmondson*, 526 S.W.3d at 87.

It was not improper for the jury to infer that Staton touched each victim for purposes of sexual gratification. Frankly, it is difficult to conjure a logical non-sexual-gratification reason why Staton would have touched either K.T. or K.B.'s penis while sharing a bed. "[L]ogic, like common sense, 'must not be a stranger in the house of the law.' *Cantrell v. Kentucky Unemployment Ins. Commission*, 450 S.W.2d 235, 237 (Ky.1970)." *Southworth v. Commonwealth*, 435 S.W.3d 32, 45 (Ky. 2014).

We reject Staton's self-serving claims that he would have been entitled to a directed verdict if he had been allowed to receive and present additional evidence, such as the victims' therapy records. Staton may, in theory, have been able to raise more doubts about the victims' credibility had he been armed with such evidence. Nonetheless, the victims' respective testimony about having their intimate parts touched by Staton would have been sufficient to avoid a directed verdict as credibility issues are reserved for the jury, not the trial court. In sum, regardless of what additional testimony Staton would have been able to amass, the victims' testimony of abuse was sufficient to deny a motion for a directed verdict as that damning testimony was far more than a scintilla of proof.

*H. Cumulative Error*

Finally, we reject Staton's cumulative error argument. Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair. We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). The only error we have discerned is the Commonwealth's vouching for the honesty of the victims in closing argument. There were no errors, singularly or collectively, which rendered the trial fundamentally unfair, so cumulative error relief is inappropriate.

### III. Conclusion

For the foregoing reasons, the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rob Eggert
Tricia Lister
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky